UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 3:22-cr-30029-MGM |
| | ) | |
| KEVIN DIVOLL | ) | |

## DEFENDANT, KEVIN DIVOLL'S SENTENCING MEMORANDUM AND MOTION FOR VARIANCE FROM THE GUIDELINE RANGE

I.   SENTENCING POLICY

Under the Supreme Court's decision in United States v. Booker, 125 S. Ct. 738, 205 (2005), the sentencing guidelines no longer are binding on the Court. Instead, the Court should look to 18 U.S.C. §3553(a) and impose a sentence sufficient but not greater than necessary to achieve the four purposes of the sentencing act set forth in §3553(a)(2). Those purposes are: [A] to reflect the seriousness of the offense; [B] to afford the adequate deterrence to criminal conduct; [C] to protect the public from further serious crimes of the defendant; and [D] to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In imposing sentence, the Court must consider all the factors set forth in §3553(a)(1-7). While §3553(4) is the applicable guideline range and §3553(a)(5) is the Commission's policy statements, other factors play at least an equal role under the statutory scheme. These include the nature of the offense and the history and characteristics of the offender. 18 U.S.C. §3553(a)(1).

Although the guidelines have become advisory rather than mandatory, determining the correct guidelines and sentencing range remains the key factor in determining a defendant's sentence. In establishing the appropriate guideline sentencing range, the Court must also consider any applicable departures and then consider the sentencing factors set out in 18 U.S.C. §3553(a) along with any other relevant considerations. Finally, it must determine whether a sentence should be above, below or within the sentencing guideline range. United States vs. Alli, 444 F. 3rd 34, (1st Circuit 2006).

II.  OFFENSE LEVEL COMPUTATION

Probation Officer Richard Rinaldi in the Pre-Sentence Report has determined that the Base Offense Level should be 34 and a Criminal History Category of 1. The Defendant has objected to the two (2) point enhancement pursuant to U.S.S.G. §2 G2.2(b). That section is applicable because of the use of a computer in possessing and distributing child pornography.

The Defendant's objection is that in 2023, the means of possessing this material is almost exclusively by computer. The guidelines became effective on November 1, 1987 when computers were in a nascent stage. At that time, the material was required through magazines, photos and movies/videos. The Sentencing Commission could not have been aware of the tremendous growth of the internet and the explosion of computer use.

The Defendant submits the enhancement is antiquated and no longer relevant with the technology of today.

III. PERSONAL HISTORY

The Court has been provided with the Pre-Sentence Investigation Report, which was performed thoroughly. The Defendant's familial and employment history was accurately captured in that report. Mr. Divoll's background will only be described briefly here.

Kevin Divoll was born on August 4, 1971 to Keith and Tana Divoll. He has one younger brother. His mother and father provided for the family but had a rocky relationship together that caused many separations and finally a divorce in the early 2000's. Mr. Divoll graduated from Athol High School in 1984 and briefly attended college at Fitchburg State University and Wachusett Community College. In 2006, he graduated Greenfield Community College as a Licensed Practical Nurse. He was married in 1992. The couple has no children and have been separated for approximately seven (7) years.

Mr. Divoll has a strong employment record as a LPN and was always a good employee and until this case, Mr. Divoll had never been arrested or charged with any criminal offense.

IV. **APPLICATION OF THE 18 U.S.C. §3553(A) SENTENCING FACTORS**

   A. **NATURES & CIRCUMSTANCES OF THE OFFESNSES, AND THE HISTORY AND CHARACTERISTICS OF KEVIN DIVOLL**

   1. **Child Pornography**

Mr. Divoll has admitted since his arrest, he is guilty of possessing and distributing child

pornography. As with many individuals he began viewing pornography on the Internet. He first began watching pornography featuring adult men and women. While he found these materials erotic, he also began watching child pornography.

In his mind, Mr. Divoll did not connect the fact that the children were harmed in the making of these images. In the time since his arrest, his views have changed, and he now knows that his thought process was delusional, and that child pornography is, in fact, harmful to the children that are the subject of it.

This is Mr. Divoll's first encounter with the criminal justice system. He has lived an honorable and law-abiding life.

Mr. Divoll still receives the support of his mother, who calls him regularly and has written a letter of support on his behalf.

Unfortunately this incident has ruined his career, and will cost Mr. Divoll his home and significant financial issues upon his release from prison. As the sole provider in his marriage, his wife will be without the financial resources she requires while he is imprisoned despite the fact that they were separated.

## B. THE NEED FOR THE SENTENCE IMPOSED TO REFLECT THE SERIOUSNESS OF THE OFFENSE, TO PROMOTE RESPECT FOR THE LAW, TO PROVIDE JUST PUNISHMENT & AFFORD ADEQUATE DETERRANCE, AND TO PROTECT THE PUBLIC FROM FURTHER CRIMES OF THE DEFENDANT.

### 1. Seriousness of the Offense

A sentence of eight years to serve, followed by five years of supervised release is a lengthy sentence, and adequately reflects the seriousness of the offense.

One factor cited to support laws against child pornography is that "child pornography is often used by pedophiles and child sexual abusers to stimulate and whet their own sexual appetites," thus leading to the victimization of more children. Child Pornography Prevention Action, Publ. L. No. 104-208, § 121, 100 Stat. 3009, 3009-26 (1996). This may be true of some offenders but it is not true of Mr. Divoll. Despite the media attention in the area that his case has generated, not one individual has come forward with an accusation against Mr. Divoll. This factor distinguishes Mr. Divoll from the other offenders Congress sought to punish. See, e.g.,

United States v. Kelly, 868 F. Supp. 2d 1202, 1204 (D.N.M. 2012) ("Yet within the realm of these crimes, there remains an important distinction between those who create and facilitate child pornography and those who only view it. Kelly has not been accused of creating child pornography or molesting children, and there is no evidence he would likely do so in the future."), United States v. Grober, 595 F. Supp. 2d 382, 404(D.N.J. 2008), aff'd 624 F.3d 592 (3d Cir. 2010) ("Compared to the predators who performed the abuse on the children depicted in the pornography [Defendant] downloaded, [Defendant's] conduct is manifestly less culpable...the Court cannot make [Defendant] a surrogate for the monsters who prey on child victims through action contract.").

Another of Congress' concerns regarding child pornography is that "child pornography is often used as a part of a method of seducing other children in sexual activity." Child Pornography Prevention Act, Pub. L. No. 104-208, § 121, 100 Stat. 3009, 3009-26 (1996). There is no evidence here, nor is there any allegation, that Mr. Divoll ever used child pornography to entice a child. E.g., United States v. Stern, 590 F. Supp. 2d945, 952 (N.D. Ohio 2008) (noting that the defendant never possessed child pornography "in order to entice a child.").

2. **Just Punishment & Adequate Deterrence**

The proposed punishment here is severe. Mr. Divoll had never spent time in jail and has no history of any criminal conduct. He also made a statement to investigators after he was advised of his Miranda rights. This sentence of eight years in prison, five years of supervised release, lifetime sex offender registration, as well as the collateral consequences, including loss of his marriage, family, reputation and employment is severe enough to provide deterrence to any other offenders who are capable of being deterred.

There is no reason to believe that giving Mr. Divoll a lengthier sentence would have any impact on the child pornography market. "While the public's outcry for harsher sentences in child pornography cases is certainly understandable, there is not a single sliver of evidence in this sentencing record remotely supporting the notion that harsher punishment would reduce the flow of child pornography on the Internet." United States v. Beiremann, 599 F. Supp. 2d 1087 1103 (N.D. Iowa 2009) (imposing sentence of 90 months of prison, with ten years of supervised release).

3. **Need to Protect the Public**

Mr. Divoll watched child pornography which he now realizes is not harmless activity. However, there is no reason to assume that, because of these charges, he will hurt a child in the future. See Beiermann, 599 F. Supp. 2d at 1112 ("mere revulsion for child pornography offenses is not a reliable indicator of the need to protect the public from defendants who commit such offenses.") Ontiveros, 2008 WL 2937539, at *5(E.D. Wis. July 24, 2008) ("the fact that a person was stimulated by digital depictions of child pornography does not mean that he has or will in the future seek to assault a child. [Defendant], like all human beings, has free will, and neither a psychologist, nor a judge, can predict what a person will choose to do in the future. A court should exercise caution to avoid imposing a sentence for a crime some fear a defendant could commit in the future, instead of for the crime he actually committed and for which he is before the court.").

Further, upon his release, Mr. Divoll will have to register as a sex offender. This factor, in addition to the condition of supervised release, has built in protections to ensure the safety of children, such as providing notice to the authorities and the public about Mr. Divoll's location and past offenses. This requirement is relevant to the protection of the public. E.g., United States v. Autery, 555 F. 3d 864, 876 (9th cir.2009) ("[Defendant] must register as a sex offender, a designation that carries both societal stigma and numerous practical restrictions designed to protect children. Under the circumstances, it was not an abuse of discretion to conclude that, compared with a prison sentence of forty-one to fifty-one months, a sixty-month probationary period combined with all the referenced restrictions will adequately protect the public.").

4. **THE KINDS OF SENTENCES AVAILABLE**

Distribution and Receipt of Child Pornography, in violation of 18 U.S.C., § 2252(1) and § 2252 A(b)(2) carries a sentencing range of a mandatory 5 year minimum and a maximum 20 years imprisonment and a $250,000.00 maximum fine.

Mr. Divoll seeks and needs treatment. He has acknowledged his problem and wants to understand it. Since being detained, he began seeing a therapist without court involvement, and has been engaged in programs. This is evident from the letters of Wyatt Correction Center personnel and certificates of accomplishment. (See attached Exhibit 1)

Lastly, Mr. Divoll will be 52 years of age on August 4, 2023. He has a diabetes condition and is daily on two (2) insulins and Metaformin. He also has high blood pressure and cholesterol, which are both treated with medications. Most importantly, Mr. Divoll has been diagnosed with

obsessive compulsive disorder and is treated with Prozac. This condition played a role in his wrongful activity at the Veteran's Administration. Mr. Divoll believes that the medication and counseling has helped in dealing with this disorder.

### 1. The Sentencing Guidelines are Too Harsh

Many judges and commentators have criticized the child pornography sentencing guidelines for being too severe. A survey by the Sentencing Commission found that "around seventy percent of federal judges consider the sentencing guidelines too severe for child pornography possession and receipt cases." Melissa Hamilton, The Efficacy of Severe Child Pornography Sentencing: Empirical Validity or Political Rhetoric, 22 Stan. L. & Pol'y Rev. 545, 545-46 (2011) (hereinafter "Severe Child Porn Sentencing").

The First Circuit has indicated concerns about the perceived severity of the child pornography guidelines. E.g. United States v. King, 741 F.3d 305, 309 (1st Cir.2011) ("We are not unsympathetic to concerns about perceived harshness in the child pornography guidelines.") United States v. Stone, F3d 83, 97 (1st cir. 2009) involved charges of knowingly transporting and shipping child pornography in interstate or foreign commerce. Through the Court affirmed the defendant's sentence, it stated:

> ...we wish to express our view that the sentencing
> Guidelines at issue are in our judgement harsher then
> necessary. As described in the body of this opinion, first
> -offender sentences of this duration are usually reserved for
> crimes of violence and the like. Were we are collectively sitting
> as the district court, we would have used our Kimbrough
> power to impose a somewhat lower sentence.

Other circuits have similarly expressed concern about child pornography sentencing. In United States v. Dorvee, 616 F. 3d 174 (2nd Cir.2010) the Second Circuit held that a Guideline range of 262 to 327 months based on a total offense level of 39 was unreasonable for a defendant who pled guilty to one count of distribution of child pornography for possessing videos depicting minors engaging in sexually explicit conduct and for trading these videos online. The Court observed that the defendant's Guideline range could have been considerably lower if he had acted actually engaged in sexual conduct with a minor rather than merely possessed and

distributed images. Id. at 187. "[A]herence to the Guidelines results in virtually no distinction between the sentences for defendants like Dorvee, and the sentences for the most dangerous offenders..."As a result, the Court rejected the Guidelines range. Id.

## V.  Judiciary Sentencing Information (JSIN)

The United States Sentencing Commission developed JSIN as publicly available data tool to provide judges with sentencing data for defendants who were sentenced for similar crimes and had the same offense level and criminal history.

Excluding defendants who were sentenced pursuant to U.S.S.G. § 5 K1.1, it was determined that there were 842 defendants who were similar to Mr. Divoll. The average length of imprisonment was 104 months, and the medium length of imprisonment was 96 months.

Mr. Divoll submits that the joint recommendation of the parties falls squarely within those sentences.

## VII. Restitution

Mr. Divoll is aware of the law and his obligation to pay restitution. While his means will be diminished he should be able to make a monthly payment. The shorter the jail term will result in the victims receiving payment sooner and for a longer period of time.

## VIII.  CONCLUSION

Kevin Divoll moves that the court sentence him to eight (8) years in the Bureau of Prisons for four (4) years Supervised Release. This sentence is "sufficient but not greater than necessary" to achieve the statutory purposes of punishment and deterrence under 18 U.S.C. §3553. The United States has recognized that this is an adequate sentence and has jointly recommended it to this Court.

RESPECTFULLY SUBMITTED,
THE DEFENDANT,
KEVIN DIVOLL

Dated: July 17, 2023

/s/ *Kevin G. Murphy*
Kevin G. Murphy, Esq.
121 State Street, Suite 201
Springfield, MA 01103
(413) 781-4700
(413) 781-0471 Fax
BBO No.:363110

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this 17th day of July, 2023.

/s/ *Kevin G. Murphy*
Kevin G. Murphy, Esquire